And we will call the next case, Huber v. Simons Agency Inc. Now we will hear first from Mr. Shaver. Good morning, Your Honors. Good morning. David Shaver, Circuit Dowd and Turner, on behalf of the appellant, Simons Agency Inc., I'd like to reserve three minutes for rebuttal. That's fine. So, Your Honors, the issues in this case really revolve around injury in fact. Article 3, the application of the injury in fact and the informational injury doctrine, I think, that Your Honor had talked about in a recent decision in 2022, Kelly v. Realpage, and how that all fits in with the district court's decisions in this case, finding that Ms. Huber had standing to bring her claim under the FDCPA under 1692e. Why are we in the realm of informational injury? We have a situation where the contention is that the notice, the letter, was capable of two readings, one of which was inaccurate, which means it's deceptive, and therefore a violation of the statute. Where is informational injury coming to play at all? Well, Your Honor, I think that the Supreme Court in TransUnion v. Ramirez talked about the no concrete harm, no injury. No, no, no. So we have a statute. That was a different situation. That was an information case. Under the Fair Credit Reporting Act, right? Right. And this is Fair Debt Collection Practices Act, where we have a deceptive notice. But we've got to have a harm flowing from the violation of the statute, Your Honor. Well, isn't it pretty clear what the harm is? I mean, the notice itself says you're seriously past due. We report delinquent accounts to the credit bureau. She didn't know what to do. She didn't pay. When you don't know what to do and you don't pay and you have a seriously delinquent situation, isn't that pretty harmful? Well, I think what it is, it's not a monetary injury, so it's not tangible in that sense. Well, it's going to be. Isn't there interest and penalties? And horrible things happen if you don't pay debt, don't they? Not necessarily, Your Honor. After the point of a charge off of a debt, there might not be any interest or penalties or anything of the kind. Well, how about reporting to the credit bureau? Isn't that pretty harmful? It could be if it was actually done, if that was done. Are there any allegations of that in this case? I didn't see them. No. The issue was she received the letter. She said that she was confused by the letter, and her confusion resulted in her inaction, and she also forwarded the letter to her credit repair professional, who we have discussed in the briefs is somebody that she had testified that she reported everything to. She sent all her letters or debt collection letters that she received to this professional, and he was going to help her manage her debt and help improve her credit score. So that was an action that she was going to be taking regardless, and she told us about that in her deposition. So what we have is if the letter is a statutory violation, we must have a concrete harm flowing from that statutory violation for Article III standing. I think that's what Judge Kavanaugh told us in TransUnion. You've got no concrete harm, no standing. You've got to have that harm flowing from the statutory violation. So if the court decides and agrees with the district court that this letter was capable of more than one interpretation and one of those interpretations was inaccurate, then I think you've got yourself to the statutory violation part. But in order to have standing under Article III, you've still got to have the second step, which is the harm, right, either tangible, monetary, or physical harm or some kind of intangible harm. She does say that as a result of her confusion that she didn't pay. She does link her failure to send in any payment to her confusion over the meaning of the two different figures. She did. She said that she was confused, and because of her confusion, she didn't do anything other than send the letter to her credit repair professional. So I think that hurts us. Do we really need it spelled out then? I mean, why isn't it that the obvious inference from that, those additional harms that Judge Vredel was identifying, for example, that there's going to be interest, that there will be penalties, that there will be reports to a credit bureau, the kinds of things that happen when you fail to make payment. But I don't think there's any evidence of that in the record or any that was presented to the district court. Well, if there were, then we wouldn't be here on standing because it would have happened. But what's left under the fair debt? What's left under the FDCPA if this isn't actionable under the FDCPA? What's left of it? I think there's all kinds of provisions under the FDCPA, Your Honor. But, I mean, the whole idea is to stop abusive practices and deceptive practices because they hurt people, because exactly what happened here happens to people. They don't know what to pay. What other accounts are there? You know, various other accounts. You know, what is this? And if I pay 517, it's not going to do me any good because then they're going to say I owe the 178. I mean, that's exactly what the Fair Debt Collection Practices Act is about. It's about people getting bills that they know what it is and they can pay them as compared to being stumped. And Judge Brody said there are inevitable consequences and the inability to manage her debt. Isn't that what it's all about? Perhaps for Ms. Huber personally. Now, I'm talking about the least sophisticated debtor here. Right. I'm not talking about her situation as such. I'm talking about anybody, least sophisticated debtor gets this is not going to know what to do, and that's exactly the harm that the statute is designed to prevent, number one. And number two, it's similar to a misrepresentation claim at common law. And with misrepresentation, you're going to have some kind of detrimental reliance on that misrepresentation, right? And that's what Ms. Huber is saying that she did, right? She has some detrimental reliance here, right? But we don't have any evidence of that for the class, and she seeks money damages for the class, individual damages. Well, we don't need. The statute says that they get damages if there's a liability determination that they are entitled to individual damages and the class is entitled to damages. So I believe. But those can be individualized. I mean, we always have individual inquiry in class actions. When people file claims, it's contested. But here, and transunion doesn't need an exact match. So, I mean, the misrepresentation claim would be sufficient at common law. I think what we're looking at is we've got confusion followed by inaction, and there's no evidence of that for anyone other than Ms. Huber. And we can't just assume that people, that we know they were sent the letter and they were not returned to Simon's agency as undeliverable. We don't know if anybody else opened the letter, read the letter, was confused by the letter, or did anything, you know, whether there was any adverse effects or downstream consequences from receipt of the letter. The harm flowing from the statutory violation. And without that evidence, when she seeks money damages for the class, then they must have Article III standing as well. But the class can be made up of the people who received this, right? That is how the class was defined, Your Honor. It's about 670 folks in Clifton Heights. And that's what happens in the Fair Debt Collection Practices Act cases. You get a class that received this and got a deceptive notice. Right. But that's only the first half of the analysis, I think, Your Honor. We have to have an injury that flows from the receipt of the deceptive notice. And I think that, you know, there's some tension between the least sophisticated consumer standard or the least sophisticated debtor standard and the current environment with respect to Article III and what the Supreme Court is telling us, that we have to have, you know, harm to the person in order to have standing to sue in federal court. Although the Fair Debt Collection Practices Act is different from TransUnion and a lot of the other cases. Right. Right? The Fair Credit Reporting Act, and I think in TransUnion, you know, we were talking about, they were looking at individuals who had, you know, a mark on their credit report that suggested that they were terrorists or affiliated with a terrorist organization, right? But it was the dissemination of that information that gave the 1,800 or so individuals standing to proceed. There was another group of perhaps 5,000 or 6,000 that did not have standing because there was no harm flowing from the violation. What about just your ability to manage your debt, to effectively manage your debt? If you concede that the letters sent out are capable of two different meanings and a least sophisticated debtor is not going to be able to ascertain which of them is accurate, then don't you almost automatically implicate the ability to effectively manage your debt? I'm not sure what it means to effectively manage debt in the sense that there could be all different kinds of ways to manage debt. You could call the debt collector. You could have communications with a creditor. I mean, there would be all different kinds of offshoots and assumptions, I think, have to be made if you say that, well, if you received a letter that was confusing, as a matter of law, under the least sophisticated debtor standard, you know, there's all different kinds of things that somebody could do to manage their debt. I'm not sure if we can just start making assumptions that because somebody got a letter that they were or that was purportedly confusing, that they would be unable to take a step one way or another to try to deal with that particular account or that debt or a series of debts or anything. Well, you get a notice that says you're seriously past due, and it's going to be reported to the credit agency if you do nothing, and you can't figure out what to do. I don't know. I have a situation in my family where we get hospital visits, and they don't attach invoices. They don't attach these things, and you can't figure it out. And you lose sleep, and that's harmful. Your Honor, I appreciate it, and we have evidence of that harm, right, as to Ms. Huber. She testified to it. But still, we're really dealing with least sophisticated debtor here. But now we're assuming that, again, we know that the letters were sent by Simon's agency, that they were not returned to Simon's agency as undeliverable. That's the evidence in the record. With respect to the broad spectrum of the class, there is no evidence presented as to the class, whether what kind of harms that they might have, whether anybody opened it, received it, or not received it, but opened it, read it, was confused by it. We're making all kinds of assumptions, and I think that the district court's analysis of those issues made all kinds of assumptions that are just not supported by any evidence in the record. And it's that absence of evidence that differentiates the Article III standing for the class members and the money damages for them as opposed to Ms. Huber individually and money damages for her. Without that evidence, I'm not sure how I think that the district court made an incorrect leap in terms of saying that these people automatically have suffered some kind of injury when there's no evidence of it. We do that all the time with class actions where the class is dependent upon the conduct of the defendant. The defendant has acted towards a class in the same way. And then you have an individualized inquiry regarding each person. That happens all the time in class actions. And I think, and I see that my time is up, Your Honor, but the individualized inquiry, you know, you need a common injury under Wal-Mart v. Dukes, right? Commonality is proven through common injury. There's no common injury shown here. I think so, you know, you would need those individualized inquiries in order to satisfy the predominance requirement under 23B, right? Those issues as to each person. What did they do in response to the letter? What was their harm? Is, you know, we know what Ms. Huber's harm. There's no evidence of what the harm was for anybody else. And, you know, I think that that destroys commonality and predominance for Rule 23. Are you suggesting that when there is an admitted statutory violation to which prospective class members were subjected, whenever there is a need to show reliance, that that forecloses a class action? Certainly not in every situation, Your Honor. And, you know, I believe that there are ERISA cases that have talked about how detrimental reliance can be overlooked and that there's different avenues in which detrimental reliance is not necessarily fatal or having that as a component isn't necessarily fatal to the maintenance of a class action. But here, where the standing of the individual is based on her response to the violation, then I think that it does destroy commonality and predominance on the class certification analysis. To the extent that goes to a question of standing, the Supreme Court has never said that you need to make that determination before class certification. In fact, they were careful to say we're not deciding that, right? Yes. And this Court's precedent, too, I believe, in Neal v. Volvo and the Miele versus the Steak and Shake, you know, talks about how the timing of that certification decision makes a difference. But I do believe that, you know, TransUnion has been in a post-trial posture. Judge Kavanaugh's decision comes, and I think that's where we are here, too, where damages were awarded to the class through, you know, summary judgment was granted to Ms. Huber on her class claim, and then class certification was granted two weeks later. And so the posture of the case, certainly at this point, she had to come forward with that evidence. We can't just, you know, rely on those allegations. We've got to have the evidence there. I want to just clarify, and for these purposes you're on our time now, you had suggested sort of conditionally, you know, if there was a statutory violation along the lines that the district court found. But there's certainly an argument to be made, looking at the form, that by the time you get to the stub where it just talks about the total balance, that that might arguably clarify any confusion that would arise from some of the statements above. But in your opening brief, you say that in a vacuum, that is if we're going to look to the four corners of the letter, the letter could reasonably be read to have two meanings, the two meanings described by the district court. So with that concession, if we conclude that the analysis needs to be made within the four corners of the document, do you agree that we have here an admitted statutory violation? If we're looking at that letter in a vacuum and the prior course of conduct between the parties and the course of communication between the parties over the preceding five or six months was not taken into consideration, if that didn't matter at all, then I think the district court's analysis is correct. And you have us on the statutory violation issue, but a statutory violation is just the beginning, and we can't automatically presume that that statutory violation harms anyone without evidence. And to the extent you are suggesting that where there's been a misrepresentation or something that is misleading, that we need to look at the element of reliance, do you add to that that there needs to be financial harm, financial loss? I don't believe that Ms. Huber suffered any financial loss here, and if we're looking at adverse effects and downstream consequences, right, from looking, from receiving or a denial of a piece of information or not getting something you're supposed to in the way that you're supposed to get it, right, that doesn't necessarily, I don't think Ms. Huber was out any money, right? I don't think that there was a monetary financial harm to Ms. Huber. I'm asking you a slightly different question. I'm sorry. If you're arguing that when it comes to looking at some traditional cause of action, that the analogy we look to is misrepresentation and there are certain elements that would traditionally go along with that tort, you've mentioned reliance. Do you also take the position that some financial loss is required to have an appropriate analog? No, I don't think that you would have to have an actual monetary loss. What do you contend you have to have? Well, like Ms. Huber in this case, right, if you have consequential inaction, right, that has some detrimental effect or possibly detrimental effect. She didn't pay her bill, so the bill is still outstanding, right? It wasn't resolved. It's still outstanding. She still owes it. So that could be enough of a, or she sent it to her credit repair professional, right? Even though that's how she treated everything, perhaps she has to pay for his services. Now, that would be a monetary loss. There's no evidence of that in the record. But I don't think you necessarily have to have an out-of-pocket money loss in order to have an adverse effect or a downstream consequence from a denial of a particular piece of information that a statute requires. What if she got an email that said, you know, and this is kind of like the middle category in transunion where they found standing, you know, we report serious past due accounts to credit agencies. Would that be enough? Showing kind of the tipping there. It's kind of like the transunion where it looks like maybe, you know, it's not just that the information isn't just sitting there. Somebody says, oh, we've sent it to some nasty people. Now, they haven't done anything yet, but we've forwarded this to some nasty people who sometimes do things. And there it was found there was standing. Isn't that kind of the same thing here? I'm not sure who the nasty people are, Your Honor, the credit reporting agencies. It was the second category in transunion. I know I'm not being clear, but the same concept that somebody's probably going to – somebody could do something about this. Well, I'm not sure having a debt that is owed and having that reported to a credit reporting agency is a harm. It's not? I think you'd have to look at each individual circumstance and say, is the debt owed? Is it properly reported? Was there a violation? Then we have absolutely no chief left in the Fair Debt Collection Practices Act, if that's the case. I don't think that's true at all, Your Honor. I just think in this circumstance here, right, when the basis for the standing and the basis for bringing the claim is I received something that was confusing to me and I didn't do anything about it, and that's why I have standing, because that inaction resulted in some – it resulted in my inaction or my inability to handle this or do anything. It paralyzed me from responding, right? Then we have evidence of that. So say confusion alone – say we agree confusion alone is not sufficient, but as you articulated a moment ago, there are other ways that you might characterize what happened. Like there's a debt that remains outstanding that wouldn't be outstanding if she had taken action. Or she sent something – she sent these documents to her credit advisor and she did testify that she paid for his services. I'm not sure if she did or not. I think that was presumed or implied in the record that she had hired Mr. Ramsey, that she had paid him something at some point, Your Honor. So why isn't that enough? If we're looking – let's put aside the concrete financial loss to the side, but just for reliance, why aren't those actions or omissions sufficient to show reliance? They might be, right? In Ms. Huber, I think we have evidence of that, but there's no evidence of that for anywhere else. And just because she received a letter, she might have understood the letter and not done anything about it, right? I mean, there could be a lot of – I'm sorry. Just to be clear, do you concede for her individual case that there is reliance? Based on her testimony, she has said that she relied to her detriment. Sure, I would concede that. I'm looking at JA-120, and the only thing she says – she's asked, and did you make any payments on those amounts? And the answer is, no, because the billing is actually unclear to me. She never says, if the bills had been clear, I had the money, I would have made a payment, I didn't make it because of that. It just says, I didn't pay. That's what she said in her disposition. It wasn't discussed. Is that reliance? Is that proof of reliance, that one statement? You know, we argued – Simon's agency argued that she was only confused in that she did not have any detrimental reliance because she did not take any action. She did not change her course of action in any way based on what she read in that letter. But an omission can be a failure to act. It can also be a reliance on something, right? It could be. And to the extent we have a record here that includes a failure to act because of her confusion and her transmission of this letter to her financial advisor, who I believe for testimony indicates was paid, your position here is that that is sufficient reliance for her individual case. Your Honor, if this letter is a statutory violation and Ms. Huber did not take action, right, or sent it on and incurred some further adverse effect, right, if she acted in a manner to her detriment, right, based on her confusion, we would say that that was meeting the test that Your Honor had announced in Kelly, the informational injury part of it. But even with that informational injury, don't we still have to have – well, we don't have that for anybody else. I'm sorry. Can I clarify? Under the Fair Debt Collection Practices Act, is a plaintiff going to have to show reliance in order to have damages? It just depends, I think, Your Honor, on the kind of case. No, no, no. In this case. In this case. We are punishing the defendant for doing what they did. Are you saying every – the only relevance of reliance is if we're trying to find a match to a common law situation and it's contended that it's not a misrepresentation case because there you need reliance. But TransUnion has said it doesn't have to be an exact match. Misrepresentation is good enough for this to satisfy. I don't believe that under Fair Debt Collection Practices Act, people are going to have to prove reliance in order to collect. I believe that law says people shouldn't do this and we have a class come in and we're going to award damages. I don't, and I'm sure your colleague can tell me whether I'm right or wrong, but I think reliance is not part of the cause of action. Your Honor, Ms. Huber's claim is under 1692E, which is the false deceptiveness leading representations portion of the Fair Debt Collection Practices Act, which if any of those prohibitions set forth in the act have a common law analog, the provisions under E would be closest to something along fraud where you would need some kind of detrimental reliance as opposed to other provisions. But that's for purposes of the concreteness test. That's not for purposes of collecting under the statute. And I'm sure your colleague can tell me that I'm wrong if I'm wrong. Well, Judge, I'll call you just one moment. Just to back up, I want to make sure I understood what you were saying earlier. Let's put aside this as an informational injury case. I take your argument to be that the appropriate analog is misrepresentation and that the common law of misrepresentation requires that there be detrimental reliance. If that is what we are looking at for purposes of Article III standing, it's your position that the statutory injury plus her failure to make payment, leaving a debt outstanding, and her transmission of this letter to her financial advisor, whom she hired and was paying, is sufficient for her individual case to establish that detrimental reliance, but not for the class as a whole. Is that your position? Yes. Yes, we will concede that if Ms. Huber has standing, and her standing is based on the informational injury doctrine and the adverse downstream consequences that she testified that she experienced based on her confusion, that that would satisfy this circuit's test for an informational injury that would give her individual standing. But if that is the basis for her standing and that is the basis for the injury, that that cannot be applied in this case to the class as a whole because there is no evidence of any kind of confusion or adverse effects or downstream consequences for anybody else. And if that is the basis on which standing is, or if that is the foundation of the standing in this case, then that doesn't apply to the class. It's if we require showing of reliance for each individual class member before certification. Your Honor, we had asked the district court to reconsider standing after summary judgment had been granted and after class certification had been entered, or summary judgment granted on the 1692E claim and after the class had been certified. The district court rejected that opportunity and declined to reconsider its position, or its ruling, I should say. And, you know, if pre-summary judgment, I think if you're looking at class certification, then I'm not sure that these are going to be taken into consideration based on this circuit's precedent. But after the fact, I think we've got to revisit that. And certainly we have an opportunity to do that, and the district court, you know, rejected our motion for reconsideration of the standing issues, you know, after the damages had been awarded and, you know, the class had been certified. Mr. Shaver, can I ask you about the Neal case, Neal v. Volvo Cars, where we squarely held that unnamed punitive class members need not establish Article III standing. Instead, the cases or controversies requirement is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class. Do you believe that's still a controlling precedent? I think that's in a little bit of tension with TransUnion, but I think we're looking at procedurally, where is the case when that decision is made, has summary judgment been decided, if you're still in the pleadings and discovery phase. I'm not aware of any decision from this court or from the Supreme Court directly stating that that is, you know, overruling that precedent. And, you know, but I do think that Neal, you know, they talk about how that, for that to work, right, in order for that, for the whole concept to work, for a class representative to have standing, for that to be perhaps imputed to the other folks, right, they have to be similarly situated, right? They have to, you have to have the common injury, and you have to have those common threads between them so that there isn't individualized inquiries. Well, but they all received a letter, correct?  Mr. Zellman. Good morning, May it please the Court. It's Doug Zellman for the appellee, Jamie Hooper. Just to address standing, because that seems to be the only issue everyone here wants to talk about today. Ms. Hooper has standing for the exact same reasons that the plaintiffs in both Kelly and Deutsch have standing. No one here discussed Deutsch to this point. It was raised in our 28-J letter last week because it was issued by Chief Judge Agares exactly one week ago from today. It's a non-presidential opinion, though. It's not binding on our court as a whole. Non-presidential opinion, that's correct, Your Honor, but it directly applied, Your Honor's analysis in Kelly, to the FECPA, the exact statute that we're talking about here today. Well, the precedent in real page, I mean, those facts involved denial of an apartment, not being able to find a place to live, no question there were at least some concrete harms. Here, the closest we've got is Joint Appendix 120, and that's no, because the billing is actually unclear to me. There's no statement, but for this letter, I was going to pay the whole amount and I didn't, and so I suffered some moral interest or a black mark on my credit or anything like that. This is much weaker than Kelly versus real page. In Kelly, the adverse effects, which is the second element of the test for Kelly, were the error caused Kelly to needlessly waste his time and caused him confusion and unnecessary distress. I'm directly quoting, Your Honor, and that the omissions directly affected appellant's conduct by impairing their ability to obtain the information they needed to cure their credit issues and ultimately resolve their issues. Here, Ms. Huber, was a list of five effects there, and it started with confusion and waste, and then it talked about impairing ability to repair and ended with the effects on housing, and the court didn't have occasion to say which of those was necessary or which was sufficient. Why should we treat confusion or waste of time as sufficient? Well, I'll just point out the court didn't say those would not be sufficient on its own. You need the other stuff as well. The court didn't have occasion to say either way. Your position seems to be that confusion or waste of time or not knowing what to do would be sufficient. Why? I would go back to Judge Chigares' decision, again, just because it directly applies as one we can go in this context. All right. It doesn't bind us. Why should it persuade us? What reasoning in it should persuade us? Because Judge Chigares directly said the harmful effects in that case were that it, the inaccurate dispute language in that case under 1692G frustrated the plaintiff's ability to intelligently choose her response and deprived her of her right to enjoy the benefits provided by the FDCPA. That's exactly what we're talking about here, Your Honor. What in the record shows that her ability to intelligently choose her response was frustrated, that but for this she would have done something different? Well, it's not that but for this you would have done something different because, again, that was directly rejected in Kelly where the court at 47F4215 said, whether appellants would have taken action on the third-party vendor information, if disclosed, is irrelevant. We don't have to show, and this goes back to what the court was asking my colleague about reliance, which is absolutely not required here, and I'll talk about that in a second, but we just need to show that she was not able to basically, she didn't get the information she needed to address her debt. She testified, hey, I didn't get the clear information, therefore I didn't pay it. She didn't have to say, if I got that information, I would have paid it. Kelly says you do not have to establish that. And in Kelly, in footnotes. Where does Kelly say you do not have to? Again, 47F4215, when it says it's irrelevant whether or not they would have acted on the information. Wait a second. Sure. The consumer cannot know the source of a potential error in their file. It is therefore enough for standing purposes for plaintiff to allege that as a result of an omission, they experienced the adverse effects of being unable to ensure a fair and accurate reporting of the credit information. Where is there an analogous harm here? Well, here, she was unable to intelligently choose her response. The entire purpose of giving people clear and accurate information about the amount of the debt is to take a look at it, determine do we owe this money, do we not owe this money, should we dispute it? The letter gives you a right to dispute the debt, right? And it's important because if you dispute it, it stops all collection activity. It's the most powerful form of doing that under the FDCPA. Under 1692H, for example, if you dispute part of your debt and not the other parts, you have the right to have your payment allocated to the undisputed portion. But Kelly involved a piece of information to which the plaintiffs were statutorily entitled. They requested it, and the entities refused to provide it. And there were a number of consequences as a result of that. Here, you seem to be saying that because this isn't really an omission. In fact, the court, the district court concluded that the information about the debt owed was provided. It's that with two pieces of information that were provided, it's deceptive or confusing or misleading. If you're now arguing to us that a document being deceptive or misleading automatically gives rise to a concrete harm of not knowing how to act, haven't you converted every statutory violation, regardless of anything else that happens downstream, any time the document meets the definition of deceptive or misleading, that a plaintiff has standing? Can that really be? We're not suggesting that every time there's a statutory violation, there's automatically a preclusion of the debtor to be able to intelligently choose their response. But what are we talking about here? The most important piece of information that a debtor needs to respond to their debt, the amount. We're not talking about some random failed to appeal. The district court found the debtor doesn't have a right to information about the total debt. You didn't appeal that. You're appealing on the issue of the individual debt here. So I don't see how that's presented. We don't need to appeal that, Your Honor. That's directly decided by the Supreme Court in Jennings v. Stevens. 574 U.S. 271 in 2015. This court has said it many times, including in United States v. Ritter, 416 F. 3256. The question about whether it's the individual debt or the aggregate, the total balance here, that was misstated, misleading, et cetera. You know, knowledge about debt generally, yes, those cases talk about. But the individual versus aggregate one, you haven't put at issue before us. Well, what I'm trying to say is the district court said that 1692G, we lose those claims because the amount of the debt was stated. It's on the piece of paper. However, that information is subject to different interpretations. It could be misleading. Therefore, we win on 1692E. That decision was contrary to this court's longstanding precedent and is inherently contradictory. Let me say why. For information to be provided pursuant to section 1692G, it is not enough to put it on the paper. I've got it, but you didn't cross appeal. But we don't need to. Yes, you do, because it goes to which claims are in the case. Let me quote from United States v. Ritter. It's one sentence. It is well established that the prevailing party below need not cross appeal to entitle him to support the judgment in his favor on grounds expressly rejected by the court below. You're talking about the judgment, the judgment as to particular claims of G versus E, but you're trying to revive a claim that was tossed below. So you're not seeking to uphold the judgment. You're asking to broaden the – to reverse a part of the judgment. No. The lower court found that we're entitled to summary judgment on our FDCPA claims and to certify a class. When do we have to cross appeal? This circuit directly addressed that question in 1987 in the case of Dali-Tesi, F814F2-129, which is if we're asking the court for more, to award us more than what we already got, then we need to cross appeal. In this case, we've already gotten everything we could have gotten. We're not going to get more money, for example, if we win on the 1692G claim. Let me put this in terms that relate specifically to the Article III standing question because the district court didn't just say, like, oh, it's all – you know, it's all – it's there, but it's all confusing. The district court said the figure of 178 is clearly presented, and that is the debt that generated the letter, and that's the only one of concern for these – for Subsection G purposes, right? But for purposes of standing and looking for some, you know, detrimental reliance, you're pointing us to inaction, failure to pay. In her testimony, when it comes to that 178, she expresses no confusion about that being an amount that was owed. Her confusion was, this other larger figure, does it encompass the 178, or is it in addition to the 178? And I don't know if I should pay – if I want to pay everything, do I – which – what figure do I pay? But the debt of the 178, she doesn't dispute, was clearly displayed, and that she understood that that was owed – that was the basis for that document. Yet she made no payment. Why doesn't that foreclose the argument of, like, look, she didn't make payment, that's the injury? Well, just – as we can see from the record, she got, I think, three different collection letters over a three or four-month period prior to this one. In some of those, she got it, she gave it to her financial advisor, they consulted, they disputed those debts, because they understood what was being asked. They said, wait, we don't owe it. She had insurance. She shouldn't have to pay it. She paid her co-pays. And then she gets this one, and now she's like, wait a second, I don't know if I should dispute it or not. I don't know if I should pay it or not. I don't know what's being asked of me here. And therefore – Sent it to her financial advisor. Right. And, again, they didn't know if they should dispute it or not. He didn't dispute this one like they did the prior ones, because they weren't clear as to what was being asked of them, what was being owed. Mr. Zellman, what does this record evidence of what she did or what her situation was – is this relevant for our purposes? Well, this goes a lot to what was being asked. My brother, which is, is reliance required? Is that, you know, for a misrepresentation – Well, and I'm getting back to the least sophisticated debtor situation. Aren't we to step back and look at this and say, if this is misleading to the least sophisticated debtor, there is a cause of action under the Fair Debt Collection Practices Act. And if the misrepresentation has to do with a material matter, not just which court clerk signed something, which we had in one of our cases, but a material matter – and this gets back to what Judge Krause was asking you – can it be that every misrepresentation – and isn't the answer yes, it can be that every misrepresentation that would be a misrepresentation vis-à-vis the least sophisticated debtor is actionable if it is material? I believe so, Your Honor, because, again, to protect every American, the way we do that is by making the standard the one of the least sophisticated consumer, the one who doesn't know, doesn't go to college like Ms. Huber, didn't go to law school like myself, right? And that's what we're trying to protect when we're sending out these letters. So what does reliance have to do with it? Well, this is what I was just trying to say. We were asking about is there a common law analog and, you know, misrepresentation requires reliance, but this court in Kelly directly answered that. I'm not sure I know. No, no, no. You were quoting from prong three of Kelly's analysis, but the previous page, prong two, as specifically for adverse effects, that was a case in which they didn't have to allege anything further than they'd lost their apartments, et cetera. So your citation to page 215 is not on point because 214 says there have to be adverse effects. There do have to be adverse effects. And what are those adverse effects? In the FDCPA context, as of one week ago, Judge Shigara said the adverse effects were not being entitled to protections, not being able to receive the benefits that the FDCPA afforded, and not being able to intelligently choose a response. What I was trying to respond to with the reliance part is when everyone was asking about the common law analog, that conversation is irrelevant because in footnote eight, Kelly says, we do not need a common law analog for informational injury. And it cites a slew of cases from the courts of appeal, which I've said that. The one I would add to it is the Hunstein v. Preferred decision, which was an en banc decision from the 11th Circuit, came out afterwards. Why is this an informational injury case? Your argument is that it's misleading or deceptive, not that there was particular information that was withheld. The information was provided. In fact, two pieces of information were provided, and they were arguably contradictory. They caused confusion. Why is that an informational injury case? I'd point to footnote one of my brief, page 32. I cite a slew of cases, starting with this court in Wilson v. Quadramet from 2000, and every one of the circuits pretty much have adopted this, including the second and seventh circuits, which we cite again, footnote one, page 32, which basically says, in order to comply with section 1692G, the information has to be conveyed accurately. When the district court is saying, this information is there, but it might be confusing, that does not work. Even if a debt collector accurately conveys the required information, a consumer may state a claim if she successfully alleges that the least sophisticated consumer would inaccurately interpret the message. And again, that's... But isn't that an alternative form of relief to the concept that it was deceptive? Because we're not urging that it wasn't deceptive. So your informational injury, I mean, that would be belt and suspenders if you needed it. But you don't need that, do you? I don't think I need it. But what I'm saying is, if we look at it from a deceptive perspective, there is harm here. If we look at it from an informational injury, you can't just say, hey, the data is on the letter. It has to be conveyed effectively. And if it isn't, then you don't get the information that you're entitled to. The difficulty here is there's a disagreement about whether you can say, okay, least sophisticated debt or confusion under the statute, whether that also necessarily satisfies Article III, or whether Article III's requirement is an independent requirement of injury, and Congress lacks the power, as TransUnion suggested, to just turn what might be desirable policy into an across-the-board, all of these letters are actionable because they're just a little confusing. You know, if a debtor falls in the forest and there's no one to hear it, has it really suffered? And I think TransUnion's saying no. What TransUnion was talking about is defamatory information, calling someone a terrorist, but then the people who prompt the second element that Your Honor was referring to earlier was the people who had that information reported in their credit reports, but it didn't get disseminated to anyone. The Supreme Court likened it to writing something nasty, putting it in a desk dresser that nobody sees it. Right. This is different. Everybody's getting this letter. This letter is not giving them accurate information about the amount that they owe, so they have no idea what they should do in response. Now, just because we haven't spoken about the standing of the class members at all, and I see my time is up, I just want to address that really quickly, as fast as my New York voice can take it, which is essentially that. Slow down. We can't hear your ass as you're talking. Exactly. And we'll certainly give you some additional time as well. Awesome. And really, it's two points. One is each of these class members suffered the same harm. None of them got clear information about the amount of their debt, so that they could not decide to exercise their rights to dispute the debt, which are listed on the same letter. But also, this is kind of putting the cart before the horse. Footnote 4 of the Ramirez decision says, we are not deciding that whether you have to prove the standing of class members at the time of class certification. It was only just a question of, at the end of the day, as Ramirez cited to Tyson Foods, which say at the end of the day, uninjured class members cannot recover damages. But we're not there yet. We haven't submitted class notice to the class members yet. We can address that on the claim forms. We can have an affidavit claim form, if needed, to say, hey, did you get this letter, and did you find it confusing, something like that. I understood, but let's go back to the standing question, because that's a threshold question that goes to jurisdiction. And where we have just even your individual client, in addition to the statutory violation, doesn't there need to be standing on her part? If individual injury is required, in addition to just the statutory violation, what is that individual injury? Thank you. Sure. And so applying this court's precedent from Kelly is a three-part test. Did you not get the information you're entitled to? Check. Was there harmful effects? Those are the words that are used. Harmful effects. We maintain, yes, because she didn't get the information she needed so that she did not know how to respond to this, that, therefore, she did not pay it, because she didn't know what to do in response. Instead, she had to waste time by sending it to her hired professional to look at it. I would note there's a slew of cases, the 11th Circuit, because I briefed this just recently, which say that wasted time is absolutely a concrete harm for Article III standing purposes. But were there harmful effects? Absolutely. Absolutely. And, again, Chief Justice Siqueiros recognized that in this context, on this statute one week ago, that there are harmful effects when a debtor is unable to intelligently choose their response because they're deprived of background information. And so what do we do with the fact that you're asking us to – you don't want us to look more broadly than the four corners of this document. You want us to focus on the debt that is identified there as owing and not the series of documents that, if she had reviewed, she would see came to the total combined with this one for the total balance figure. Aren't you asking us, or have your cake and eat it, too, to say that the confusion here and the detrimental reliance in inaction is about the total amount rather than the particular debt, that is the 178, that is what generated this correspondence and that the district court found was accurately and clearly conveyed? And that she said in her own deposition she wasn't confused, was the amount that was owed for the particular services for which that document related. I think there's a couple of things in that question, and just to address it one by one. Yes, we have to look at the four corners of this document. The least sophisticated consumer standard does not anticipate that debtors are going to remember medical bills that they got months prior. She got one in May, one in June, one in July, and now this in September. There's no way she's putting those together. I get these every day for all my kids. And then you look at it, you decide what you do or don't, and then you throw it out. No, unless you're my father, you're not scanning them, labeling them, and then putting it in a file labeled 2022. Most people don't do that. But then going to the harm again, the 1692 GA1 talks about giving debtors the amount of the debt, right, the amount of the debt. And then 1692 GA3 through 5 talk about why are we doing this. We're doing this so they have an opportunity to look at that amount, decide whether or not they owe it, and so that they can dispute it. Now, when she looks at it, she doesn't know what she should be disputing here. And people, in my experience, when I'm dealing with consumers all day long, they don't want to just throw out garbage disputes or dispute something they really owe. If they owe it, they want to pay it. They're not deadbeats. And if they don't, they want to dispute it because they believe, like in this case, insurance should have covered it. But how is she supposed to know what she's going to be disputing here, Your Honor? Because we're talking about four different days of service that she's not being told which is what. She doesn't know what amounts are combining that. There's no way she's remembering that in May she got a bill for $83 and in June she got a bill for $117 and that all this adds together to $517. And so, therefore, the answer is she looked at this and did not know what it is that's being asked of her, what it is she should be disputing, and, therefore, how to respond appropriately. She shouldn't have to go. She knew that the $178 was owed, right? Say that again. She knew that the $178 was owed. She saw the amount $178 on this letter, yes. But when she's being asked to take action in response to this letter where it says, you know, total $517.50 for various other accounts, now she's lost. She shouldn't have to go to a professional. The page, the payment stub lists the total amount as $517. But it doesn't, well, but if she paid the $178, she doesn't know that if she paid the $178 that she might still be reported to the credit agency. She doesn't know that that's going to do any good. That's my point. You have no idea what's going on here. And if you dispute part of this debt, is the other part going to get reported? If you dispute part of this debt, can you allocate your payment just to the undisputed portion like 1692H contemplates? That's the point. This isn't just, you know, some random issue that, like, can't really affect people's ability to address the debt. This is the amount. This is, like, this is it. And if you're not giving people this, you know, they can't determine what to do with response to their debt. That absolutely harms the average American, getting these medical bills and trying to figure out what their response should be and how they should address this for themselves and for their family. The lower court decision to be affirmed. Thank you, Your Honor. I'll give you a few minutes on rebuttal. I'm sorry? I'll give you a few minutes on rebuttal. Thanks very much. First, with the Deutsch, as Your Honor's pointed out, it's not precedential. It was a decision on a motion to dismiss. The truth of all of the plaintiff's allegations had to be assumed. All the factual allegations, I should say, had to be presumed as true. For purposes of the evaluation of that particular claim under 1692 GA. So I don't think that Deutsch is applicable. I mean, we're at the post-summary judgment. The issues, the damages were awarded, right? The parties stipulated to the amount, the maximum statutory amount. There's no actual damage. You know, so I don't think that Deutsch applies. You know, one, Ms. Huber, the four letters that she received, she says that she disputed three of them but couldn't figure out how to dispute the fourth one. She disputed the letters. They're all in the same form, right? I mean, if the court takes issue with the format of the letter, right, the juxtaposition of amount with a certain numerical value stated in that box versus various other accounts, total balance box, right? She was able to discern from those letters that, hey, I don't know what this is. I'm going to dispute those. But according to counsel, not for the fourth one. You know, the class members haven't suffered the same harm. At least there's not any evidence of it. No evidence was presented, right, if there's harm, right? And that's the point. Under the scheme of the Fair Debt Collection Practices Act, the defendant commits this violation. And that's sufficient for purposes of the class, correct? No, you're talking about statutory damages, and they're fixed, aren't they? The Fair Debt Collection Practice makes, I think they call them additional damages under 6092K, available to those who are aggrieved or who prove liability. But I think the Supreme Court tells us that we can't just assume liability, right? Even though Congress enacts a statute, there still must be an actual harm to the person that results from that statutory violation, right? If Congress made it a violation to, you know, write something on the sidewalk with chalk, right, and somebody did that, you know, they would have committed a violation of that particular prohibition. But where is the harm? Somebody would actually have to be aggrieved. You know, there would have to be a harm flowing from the statutory violation. And that's the, I think that's the point that we want to make, is that Ms. Huber received a letter, says she read it, says she didn't know what to do about it. She was confused by it. Those sound like intangible harms, right? It's nothing physical, it's not she didn't break her arm, she didn't, you know, there's some information in the record that Your Honor was pointing out, Judge Krause, I think you were talking about it earlier, right, about, you know, at least the implication or it's implied that she paid Mr. Ramsey, her credit repair professional, for his services. Now, when that happened, we don't know. We don't know in what amounts or if she paid him a lump sum to start. And she said that she sent him all of her letters, right? She didn't change her course of conduct in any way based on what she read. She didn't do anything, really, except sue us. And, you know, just because the Fair Debt Collection Practices Act says that somebody has the ability to sue us doesn't mean that they have, standing under Article III, that they've suffered a concrete harm. You know, we would ask that Your Honors reverse the district court decision on summary judgment. We would ask that Your Honors find that the district court abused its discretion in granting class certifications, specifically with respect to commonality and the predominance factors, although even with numerosity, we just have, you know, the way the class is defined, we just know how many people were sent the letter that was not returned as deliverable. We don't know what they did with it, if anything, or what effects or anything happened. And we would ask, you know, that Your Honors reverse the district court. Thank you very much. Thank you to both counsel. We will take that case under advisement as well.